IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIMOTHY LOPATA,

   Petitioner,

v.                                                Civil Action No.: PWG-19-928

WARDEN,

   Respondent.

**MEMORANDUM OPINION**

In response to the above-entitled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Respondent seeks dismissal of the petition as time-barred. ECF No. 7. After advising self-represented Petitioner Timothy Lopata of his right to respond to the allegation that his petition is untimely, Mr. Lopata filed a Reply asserting his actual innocence and seeking appointment of counsel for assistance in establishing his innocence. ECF No. 8. The court finds no need for an evidentiary hearing and therefore denies Mr. Lopata's request for counsel. *See* Rule 8(a) & (c),[1] *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2018); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons stated below, the petition shall be dismissed as time-barred and a certificate of appealability shall not issue.

**Background**

Mr. Lopata was tried by a jury in the Circuit Court for Baltimore City, Maryland in two separate cases. In case number 505209018, Mr. Lopata was convicted of second-degree assault and reckless endangerment; in case number 505209021 he was convicted of robbery and

---

[1] Under Rule 8(c) of the Rules Governing § 2254 cases, this Court is obliged to appoint counsel when an evidentiary hearing is warranted.

conspiracy to commit armed robbery. ECF No. 7-1 at 3-4; 28-29. The jury returned guilty verdicts on November 28, 2006. *Id*.

Mr. Lopata appealed his convictions to the Court of Special Appeals which resulted in an unreported opinion dated May 7, 2010 affirming his convictions. ECF No. 3 at 4. The mandate issued on May 7, 2010. ECF No. 7-1 at 11, 35. Mr. Lopata did not seek further review of his convictions with the Maryland Court of Appeals. For purposes of calculating the one-year filing deadline for seeking federal habeas relief Mr. Lopata's conviction therefore became final on May 22, 2010. *See* Md. Rule 8-301(setting the time for filing a petition for writ of certiorari with the Maryland Court of Appeals 15 days after the Court of Special Appeals issues its mandate, or 30 days after the issuance of the court's opinion).

On June 7, 2011, Mr. Lopata filed a post-conviction petition which he later withdrew on September 12, 2012. ECF No. 7-1 at 11-13; 36-37.

Mr. Lopata filed a pro se petition for writ of actual innocence on April 14, 2014. ECF No. 7-1 at 13; 38. The petition was dismissed on August 22, 2014 for Mr. Lopata's failure to comply with pleading requirements. ECF No. 7-1 at 14-15, 38-39. On September 19, 2014, Mr. Lopata was granted leave to amend the petition to correct the deficiencies. Mr. Lopata filed an amended petition on October 7, 2014. *Id*. at 15. A hearing was held on the petition on June 17, 2015. *Id*. at 17, 41. On September 8, 2015, the state court denied the petition for writ of actual innocence. *Id*. 17, 42.

On August 14, 2014, Mr. Lopata filed a second post-conviction petition. ECF No. 7-1 at 13, 38. On March 27, 2017, the state court held a hearing on the petition. *Id*. at 20-21, 45. On April 5, 2017, the court granted in part and denied in part post-conviction relief. *Id*. at 21-22, 46. Mr. Lopata was granted the opportunity to file a belated motion for reconsideration of his sentence

or a belated application for a three-judge panel review of his sentence within 90 days of the date of the court's order. *Id*. at 22, 46.

On May 4, 2017, Mr. Lopata filed an application for leave to appeal the denial of post-conviction relief with the Court of Special Appeals. *Id*. at 22, 46. On March 6, 2018, the appellate court issued its mandate denying the application. *Id*. at 24, 48.

On May 10, 2017, Mr. Lopata filed an application for review of sentence by a three-judge panel. ECF No. 7-1 at 22, 46. On July 7, 2017, the three-judge panel denied relief noting that the sentence imposed was fair and just. *Id*. at 23, 47.

On June 30, 2017, Mr. Lopata filed a Rule 4-345(e) motion for reconsideration of his sentence. *Id*. at 23. The motion was denied on November 6, 2017. *Id*. at 23, 48.

In his petition filed with this Court, Mr. Lopata asserts that the victim was coerced into identifying him as his assailant; the State violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) when it withheld a statement by the victim that exonerated Mr. Lopata; post-conviction counsel rendered ineffective assistance of counsel by failing to subpoena trial counsel for a post-conviction hearing; and that he was denied the right to face his accuser due to trial counsel's ineffective assistance of counsel. ECF No. 3 at 5.

## Discussion

Under the provisions of 28 U.S.C. § 2244, the one-year limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

3

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Mr. Lopata's petition is untimely. His conviction was final on May 22, 2010. The one-year federal filing period began to run that day and expired one-year later on May 22, 2011. The filing period was not tolled by Mr. Lopata's June 7, 2011 post-conviction petition. ECF No. 7-1 at 11-13, 36-37. By the time he filed another post-conviction on August 14, 2014, the federal filing deadline had long since expired. Mr. Lopata's federal habeas is deemed filed on March 17, 2019, the date his initial letter to this Court was written and almost eight years after the one-year filing period expired. ECF No. 1. The petition is clearly untimely.

In his Reply, Mr. Lopata claims he is actually innocent and has maintained his innocence for the past 15 years. ECF No. 8. Mr. Lopata seemingly admits that he and his defense counsel were aware of the victim's recantation at the time of trial, but he asserts the jury was never made aware of the statement. *Id*. He adds that had his counsel made the jury aware and had he called the victim as a witness the jury would not have convicted him of the crime. *Id*. Mr. Lopata also asserts he is entitled to equitable tolling of the limitations period because he only has an eighth-grade education and he was never advised of the one-year filing deadline for federal habeas petitions. ECF Nos. 8 and 10. Each of Mr. Lopata's claims are addressed below.

**A.      Actual Innocence**

Actual innocence is an "equitable *exception* to § 2244(d)(1), not an extension of the time

statutorily prescribed." *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013) (emphasis in original). "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief." *Id*. at 392. Thus, Mr. Lopata's claims, which are concededly time-barred, may be reached if "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id*. at 395 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). In the context of an untimely petition, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Perkins*, 569 at 399. "It would be bizarre to hold that a habeas petitioner who asserts a convincing claim of actual innocence may overcome the statutory time bar § 2244(d)(1)(D) erects, yet simultaneously encounter a court-fashioned diligence barrier to pursuit of [his] petition." *Id*. "This rule, or fundamental miscarriage of justice exception, is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id*. at 392.

Examples of the type of new evidence that have been found to satisfy the actual innocence gateway standard are: (1) new DNA evidence and expert testimony "call[ing] into question" the "central forensic proof connecting [the petitioner] to the crime," as well as "substantial evidence pointing to a different suspect," *House v. Warden*, 547 U.S. 518, 540-41 (2006); (2) "sworn statements of several eyewitnesses that [the petitioner inmate] was not involved in the crime" and affidavits "that cast doubt on whether [the petitioner inmate] could have participated" in the offense, *Schlup*, 513 U.S. at 331; (3) a third party's consistent and repeated statement that the third party committed the offense, *Jones v. McKee*, No. 08 CV 4429, 2010 WL 3522947, at *9-10 (N.D. Ill. Sept. 2, 2010); *Carringer v. Stewart*, 132 F.3d 463, 478-79 (9th Cir. 1997) (finding that the petitioner opened the actual innocence gateway where another person testified under oath that he

5

committed the offense and separately boasted to other individuals that he set-up the petitioner); and (4) documentary evidence indicating that the petitioner was in another country on the day of the offense and five affidavits from individuals stating that the petitioner was outside the country at the precise time of the offense, *see Garcia v. Portuondo*, 334 F. Supp. 2d 446, 452-56 (S.D.N.Y. 2004). *See generally Schlup*, 513 U.S. at 324 (providing the Supreme Court's statement that examples of sufficient new reliable evidence for a gateway claim including "exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence").

Mr. Lopata's actual innocence claim centers around statements made by the victim, Howard Fry, that Mr. Lopata was not involved in the crime. He claimed at his post-conviction hearing that his trial counsel was aware of Mr. Fry's statements exonerating him, but she failed to call him as a witness. ECF No. 7-2 at 19-21 (post-conviction hearing transcript). Post-conviction counsel explained at the post-conviction hearing that Mr. Fry[2] testified under oath at the hearing for Mr. Lopata's actual innocence claim and maintained that Mr. Lopata was not involved. Counsel summarized his argument as follows:

> Your Honor, our contention is, Your Honor, that given his availability, his willingness to testify, and the fact that he knew Mr. Lopata, and the fact that Mr. Lopata had an alibi, this would not have been inconsistent with Mr. Alibis (sic), you're not arguing converse or argument in the alternative defenses. This would have been consistent. Mr. Fry testifying that he knows Mr. Lopata, had known Mr. Lopata, knew Lynn Lopata, knew the people who assaulted him, and Mr. Lopata was not one of them, would've meshed quite nicely with the testimony by Mr. Lopata and his relatives that he was grieving at the time this offense occurred 'cause his baby had died not a couple weeks prior to this, that he was at the home of his stepfather and didn't leave the house but for an occasional run for cigarettes or a soda.
>
> So, there was no logical reason not to call this witness who was available to testify the defense and this is where the issue of prejudice comes in. Your Honor. This is not a strong State's case in my estimation.

---

[2] At time of the post-conviction hearing Mr. Fry had passed away.

ECF 7-2 at 43.

Mr. Lopata's petition for writ of actual innocence was denied by the State court because the statements by Mr. Fry were not new evidence. Mr. Fry made similar statements before the trial and the statements were therefore available at trial. The State's Attorney explained that defense counsel for Mr. Lopata, Janice Bledsoe, was not remiss in failing to call Mr. Fry as a witness:

> Ms. Bledsoe also indicated her understanding of Mr. Fry's conditions at that time. Your Honor, during testimony of Mr. Fry's mother, as well as Dr. Scalia, Ms. Bledsoe as well as the State brought out in front of the jury all of the difficulties that Mr. Fry had mentally. Ms. Bledsoe specifically brought out the fact that Mr. Fry had schizophrenia. It was discussed in his medical records and it was available to the jury regardless. Mr. Fry's mother testified that he had mental retardation issues since he was a child, that he was homeless, it came out during trial that Mr. Fry was combative with his mother, this came out during the testimony of Ms. Fry. It came out that he was schizophrenic, that he was mentally disabled, and during the testimony of Dr. Scalia from Shock Trauma Hospital it came out that Mr. Fry had suffered additional brain damage as a result of the incident, including the injuries to Mr. Fry.
>
> Your Honor, it's evident from the medical records which were put into evidence during the trial that Mr. Fry suffered multiple surgeries after this incident.
>
> ***
>
> Defense Counsel would be placing a very combative, schizophrenic, mentally disabled person. Defense Counsel would've been putting in front of the jury the severity of the injuries that Mr. Fry sustained. Mr. Fry's appearance was documented in photographs and presented to the Court, but that does not show the extent of the mental difficulties, it does not even show really the extent of the physical ailments that Mr. Fry had. It was purely a strategic decision on behalf of Defense Counsel to avoid placing in front of this jury Mr. Fry, who had no legs, no hands, was schizophrenic, mentally disabled, brain damaged, and quite honestly, combative.

ECF 7-2 at 50-51.

Applying the actual innocence standard as a gateway to consideration of an untimely federal petition for habeas relief, Mr. Lopata's claim of actual innocence misses the mark. As

7

every court to consider the "evidence" he relies upon has noted, the evidence is not newly discovered. "Evidence is not 'new' if it was available at trial, but a petitioner merely chose not to present it to the jury. In that situation, the choice not to present the evidence does not open the gateway." *Goldblum v. Klem*, 510 F.3d 204, 226, n.14 (3d Cir. 2007). Additionally, serious questions impacting on the value of Mr. Fry's recantation have been raised in both the State post-conviction proceedings and the writ of actual innocence proceedings. At post-conviction, the State's attorney questioned Mr. Lopata regarding a video of Mr. Fry recanting. Mr. Lopata admitted that his friend tracked Mr. Fry down and questioned him about the case. *See Perkins*, 569 U.S. at 401 ("evidence of innocence must be so strong that a court cannot have confidence in the outcome of the trial"). Here, there is ample reason on the record to doubt that Mr. Fry's statements to Mr. Lopata's friends and family would exonerate one who is actually innocent.

**B.   Equitable Tolling**

"[T]he one-year limitation period is also subject to equitable tolling in 'those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation against the party.'" *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). To be entitled to equitable tolling, a petitioner must establish that either some wrongful conduct by Respondents contributed to his delay in filing his petition or that circumstances that were beyond his control caused the delay. *See Harris*, 209 F.3d at 330. "[A]ny resort to equity must be reserved for those rare instances where . . . it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id*.

Mr. Lopata suggests that he is entitled to equitable tolling of the limitations period because he was not informed by his attorney of the one-year filing period for federal habeas petitions. ECF

Nos. 8 and 10. He states he has an eighth-grade education and is not well-versed in the law. *Id*. To the extent Mr. Lopata lays blame on his attorney for not advising him of the federal habeas deadline, any error by counsel is not a valid basis for equitable tolling. Attorney error is not an "extraordinary circumstance." *See Rouse v. Lee*, 339 F.3d 238, 248 (4th Cir. 2003) (lawyer's misinterpretation of statutory prerequisites to a habeas motion were not extraordinary); *see also Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999) (lawyer's miscalculation of limitations period is not a basis for equitable tolling); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999) (lawyer's decision to mail petition by ordinary mail instead of expedited delivery not basis for equitable tolling). "[A] mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding." *Harris*, 209 F. 3d at 331.

Mr. Lopata's lack of education or knowledge of the law is also not an adequate basis for equitably tolling the federal filing deadline. A petitioner's unfamiliarity with the law is not a basis for equitable tolling. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) ("ignorance of the law is not a basis for equitable tolling"). Additionally, Mr. Lopata did not diligently pursue his rights following his conviction. After his conviction was affirmed on direct appeal, there was approximately one-year that elapsed before he filed his first post-conviction petition. After that, Mr. Lopata allowed nineteen months to elapse without any pursuit of any post-conviction remedies, then waited another five years before filing his petition in this Court. This lack of diligence forecloses the application of equity to toll the limitations period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("a litigant seeking equitable tolling bears to burden of establishing . . . he has been pursuing his rights diligently, and . . . that some extraordinary

9

circumstance stood in his way."). Mr. Lopata is not entitled to equitable tolling of the filing deadline.

**Conclusion**

In addition to consideration of whether Mr. Lopata's petition is properly filed, this Court must also consider whether a certificate of appealability should issue. When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Mr. Lopata has not demonstrated that a certificate of appealability is warranted, but he may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.

December 8, 2020\_\_\_      _____/S/_____
Date                      Paul W. Grimm
                          United States District Judge